### RUCKER et al. v. BURKE et ux.

No. 23600. Oct. 30, 1934.

Rehearing Denied Jan. 8, 1935.

244

Willingham & Fariss, for plaintiffs in error.

Clay M. Roper and Foster & Merson, for defendants in error.

McNEILL, J. The defendants in error, as plaintiffs, filed a petition in the district court of Oklahoma county in which they alleged that they were the owners of lots 31 and 32, block 16, Central addition to Oklahoma City, and sought to quiet title against the defendants, C. E. Stout, T. B. Rucker, Bob Rucker, and Hall-Briscoe, Inc.

The defendant Bob Rucker filed an answer equivalent to a disclaimer, and it appears from the pleadings and from the judgment of the court that the defendant Hall & Briscoe held an oil and gas lease on the property in question. No further mention need be made of these defendants.

The defendant T. B. Rucker filed an answer and cross-petition, in which he alleged, in substance, that he deraigned his chain of title to a patent from the United States government; that in this chain of title Henry E. Langreck, under date of May 24, 1930, executed a quitclaim deed to C. E. Stout, who, on November 15, 1930, executed a quitclaim deed to T. B. Rucker. The defendant T. B. Rucker, in his cross-petition, asked that his title be quieted against the plaintiffs.

Henry E. Langreck was permitted to file a plea of intervention, in which he alleged, in substance, the ownership of the property to be in accordance with the chain of title deraigned by T. B. Rucker. He alleged that the only known claim of title of the plaintiffs was based upon certain tax deeds, which he alleged are void for the following reasons:

"1. That the property was not advertised before being sold at the November sale for the years upon which the purported tax deeds are based in a form and manner required by law.

"2. That the county treasurer failed to make a return of the said sale for the years upon which the purported tax deeds are based.

"3. That the property was not advertised before being sold at resale in a form and manner required by law, and furthermore that this interpleader never received any notice of the application for a tax deed, and the proceedings leading up to the issuance of the tax deeds are absolutely void and of no force and effect.

"4. The county treasurer failed and neglected to file a return of the purported resale and retain a copy in his office as required by law.

"5. That the tax deeds are absolutely void on their face for the reason that they show that Oklahoma county was a competitive bidder at the original sale, and for the further reason that each and all of the tax deeds upon which the property was sold together for a lump sum, not sold separately in a form and manner as required by law."

Langreck tendered all taxes, costs, and penalties exempted from tax sale, and prayed that the title of T. B. Rucker, his grantee, be quieted.

The court entered judgment finding that the plaintiffs were the legal owners of the property and quieted their title against T. B. Rucker, Henry E. Langreck, and Bob Rucker.

The only question raised in the trial court and the only question presented here is the validity of the resale tax deed for the property in question. The property was sold at the April, 1924, resale, and such resale was based on the tax sale of 1921 to the county for the 1920 taxes.

The first contention is that the resale tax deed is void on its face, in that it recites that the lots in question were sold together with three other lots not adjacent, and not separately. The resale tax deed in question covers various lots in different blocks which were sold and included in this one deed, the lots located in the same block being described together; the applicable part of the recitals in the deed being as follows:

"M. S. Ryan, the undersigned county treasurer of said county, pursuant to said advertisement, did offer separately for sale at public auction for cash at the office of the county treasurer in the courthouse in and for said county of Oklahoma, when, by law, the taxes are made payable, and did then and there sell separately the following described real property for the amounts set opposite thereto, to wit: * * *

"Lots six (6) blk. eleven (11) Central addition to Oklahoma City, Okla. Sold for

the sum of one dollar ($1.00) ____ Nineteen (19), twenty-six (26), thirty-one (31) thirty-two (32) and thirty-five (35) all in blk. sixteen (16) Central addition to Oklahoma City, Okla., sold for the sum of twenty-five cents (.25) each."

The evidence showed that each lot was actually sold separately, and the deed recites that each lot was sold separately. It is contended that the recital "Nineteen (19), twenty-six (26), thirty-one (31), thirty-two (32) and thirty-five (35) all in Blk sixteen (16) Central addition to Oklahoma City, Okla., sold for the sum of twenty-five cents (.25) each", does not show a separate sale for each lot, but that the five lots sold for the aggregate of $1.25. We do not think such a construction should be placed on the language here used. The deed plainly recites that the treasurer "did * * * sell separately the following described real property for the amounts set opposite thereto. * * * " Instead of the deed reciting that lot 26 sold for 25 cents, lot 31 sold for 25 cents, lot 32 sold for 25 cents, and lot 35 sold for 25 cents, it recites that each of the lots sold for 25 cents, which means the same, and fully complies with the law, and is not for that reason void on its face. Elerick et al. v. Reed, 113 Okla. 195, 240 P. 1045.

The next contention urged is that the record of 1921 tax sales for 1920 taxes does not show that the property was ever sold to the county, and that no name of any purchaser was shown in the return. The record shows that so many lots are sold for taxes in Oklahoma county that it is necessary to keep a record devoted exclusively to sales to the county, and it was not necessary to list the name of the county under the column headed "purchaser."

The county clerk testified as to this record as follows:

"Q. Now, it shows, then, that lots 31 and 32 were sold? A. Yes, sir. Q. Now, then, I don't believe under the column which says 'purchaser' any name is listed there, is it? A. Nothing, no sir. Q. When it is blank that way, what does that indicate? A. Well, that is the county sale record. * * * Q. (By Mr. Fariss) : Is there any property in that book sold to individuals? A. No, sir."

We find no merit in this contention.

The plaintiffs in error also contend that the record does not show that the property was ever advertised before the sale was made to the county. This contention is based on the evidence of Frank Bailey, a deputy county clerk, who testified that

the only record the county clerk's office would have of the advertisement would be the proof of publication itself, and there was none in that office. This witness did not work in the office of the county clerk in 1922, nor from that up until January, 1931.

Section 12745, O. S. 1931, section 9735, C. O. S. 1921, provides that the county treasurer shall file his return of the sale with the county clerk, retaining a copy in his office, showing the land sold, the name of the purchaser, and the sum paid by them, and also a copy of the notice of the sale, with the certificate of the advertisement verified by affidavits, and such certificate shall be evidence of the regularity of the proceedings.

By section 12760, O. S. 1931, section 9750, C. O. S. 1921, a tax deed is made presumptive evidence of the things therein specified, which includes the advertisement of the sale. By section 12756, O. S. 1931, section 9746, C. O. S. 1921, as amended by Laws 1923, C. 158, sec. 6, a return of a resale made by the county treasurer to the county clerk is made presumptive evidence of the regularity, legality, and validity of all the official acts leading up to the resale. By section 12747, O. S. 1931 (section 9737, C. O. S. 1921), a tax sale certificate is made presumptive evidence of the regularity of all prior proceedings.

The resale tax deed is regular on its face. It is presumptive evidence of the advertisement of the property for sale. It is true that this presumptive evidence may be rebutted, and the evidence of the deputy court clerk that a copy of the proof of publication could not be found in the county clerk's office was competent as tending to show that the property had not been properly advertised, but the fact that, in 1931, a deputy in the county clerk's office could not find a proof of an advertisement made in 1924 does not have any probative value that such advertisement was not made; nor is it proof that the publication was not filed. The presumption is that the county treasurer performed his duty and filed his return in accordance with the law.

There is no statute requiring the proof of publication to be recorded, and it is apparent that such proof might be misplaced or lost. Had the advertisement not been made, the sales record in the county treasurer's office could have been placed in evidence to establish such fact. The question of whether the advertisement had been made was a question of fact to be determined

from all the evidence, and we think the trial court was fully justified in finding that the same was so made.

The burden was upon the plaintiffs in error to show that there was no publication of notice of sale. They failed to sustain that burden. Judgment affirmed.

RILEY, C. J., and SWINDALL, OSBORN, and BUSBY, JJ., concur. CULLISON, V. C. J., and ANDREWS, BAYLESS, and WELCH, JJ., absent.